## A97A0886. SCAPA DRYERS FABRICS et al. v. MURPHY.

(491 SE2d 146)

BEASLEY, Judge.

Having convinced the administrative law judge and the appellate division of the State Board of Workers' Compensation that Robin Murphy's leg and back problems were not related to her employment, Scapa Dryers Fabrics and its insurers ("Scapa") did not fare similarly at the superior court. They appeal on the basis that the court failed to follow the "any evidence" standard. We agree with Scapa and reverse.

Construed in favor of the Board's findings, the evidence shows that from 1979 until 1995 Scapa employed Murphy as a Y-seamer at its plant in Ware County. Her job was sedentary, for her primary responsibility was to sit on a stool and operate (and with new equipment in later years, simply watch) a machine that would seam together certain industrial fabric. In 1984 she was involved in an auto accident, which subsequently caused her periodic pain in her back and legs. Various doctors treated her, and she repeatedly told those doctors and her fellow employees that her malady arose from the auto accident. She did not tell anyone at Scapa that it resulted from or was aggravated by her work.

In December 1994, Murphy left work early to receive hospital treatment for the pain. Affirming to Scapa once again that the pain was not job related, she submitted medical insurance forms over the next several months stating that her medical treatment was for a sickness and not for any injury associated with work. She returned to work the day after her December hospital treatment and worked continuously until March 2, 1995, when she took the day off to receive more medical treatment. She returned to work the next day, the pain reoccurred, and thereafter she has not returned to work. When she told Scapa her condition was job related and requested workers' compensation, Scapa declined, based on her previous statements.

Murphy filed for workers' compensation, claiming that her job activities either caused her pain or aggravated her injuries from the car accident. Following a hearing, the ALJ denied the claim and wrote "I find that the employee sustained a motor vehicle accident over 10 years ago wherein she injured her lower back. I find that she remained at work and performed her regular duties all the way until March 3, 1995. I find that the employee's job did not independently aggravate the employee's pre-existing condition. I so find in part based upon medical evidence, where in relatively little of the histories given over the course of treatment over the last six years did she mention her work as being the cause. I also find that the employee did not report to her supervisors that her job was causing her difficulties. The employee may have reported that she was having diffi-

culties while she happened to be at work, but this is not the same thing. I am persuaded by the testimony of the witnesses from the employer, all of whom were told by the employee that her motor vehicle accident was the real cause of her problems. I am also persuaded by the employee's statements made on her insurance claim forms, on none of which did she indicate that her problems were caused by an injury. I find that the employee so continued to report not only through March of 1995 but all the way through May of 1995, long after she had ceased work. I find that the employee's condition was not the result of an accident arising out of and in the course of employment. There are indications in some of the medical records that the employee's difficulties may have resulted from other causes. Moreover, there is no indication in any of the medical evidence that the herniated disc that the employee obviously had was in any way caused by or aggravated by her work activities. I so conclude because I find that the employee's job was in the main sedentary, requiring relatively little in the way of heavy lifting, pushing, pulling, or bending. This is particularly as shown by the videotape [of Murphy's job duties] and by the employee's own testimony as well as that of [her supervisor]."

The appellate division held the findings were supported by a preponderance of the competent and credible evidence and adopted the ALJ's award as its own. See OCGA § 34-9-103 (a). Murphy appealed to superior court, which set aside three of the Board's fact findings as being unsupported by evidence and remanded the matter for reconsideration consistent with the court's holding.

OCGA § 34-9-105 (c) (4) authorizes the trial court to set aside the Board's fact findings only if "[t]here is not sufficient competent evidence in the record" to support those findings. See *Bankhead Enterprises v. Beavers*, 267 Ga. 506, 508 (480 SE2d 840) (1997); *Bennett-Murray, Inc. v. Barnes*, 222 Ga. App. 137, 139 (1) (473 SE2d 166) (1996). "In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board." (Citations and punctuation omitted.) *Atlas Automotive v. Wilson*, 225 Ga. App. 631, 633 (1) (484 SE2d 669) (1997). See *Waffle House v. Padgett*, 225 Ga. App. 144, 146 (483 SE2d 131) (1997); *Southwire Co. v. Molden*, 223 Ga. App. 389, 390 (477 SE2d 646) (1996). Ample evidence supported the Board findings at issue.

The superior court first set aside the finding of fact that "the claimant was impeached by health insurance forms that her

problems were sickness and not injury." The court explained "that the uncontradicted evidence showed the claimant followed her employer's instructions in filling out these forms." The court erred in several respects.

First, the Board did not find that Murphy was "impeached" by her medical insurance forms. Rather, the Board simply referred to those forms as one indication that her condition was not related to an injury arising out of her employment. Other evidence included her repeated comments to co-workers and doctors as well as her not reporting to her supervisors that her work either caused or aggravated her pain. In fact, in her brief to the appellate division, Murphy conceded "[s]he told everybody at work that she thought her problems arose from her car wreck in 1984. She freely admitted at the hearing that she thought the problems arose from her car wreck."

Murphy impeached herself. She testified that she believed as early as 1986 that her pain was job related. Yet she did not tell this to anyone for at least eight years. She claims she finally told the hospital personnel when she was there for treatment in December 1994, but the hospital records do not reflect that she mentioned it. When queried about this very subject by her supervisor on the day she went to the hospital, she expressly denied her pain was job related.

Second, the court's focus on Murphy's self-serving testimony that her supervisor told her to mark the box "sickness" on the insurance forms ignores that her supervisor relied on *her* representation, for Murphy had consistently denied that her pain arose out of any job-related injury and related it instead to a car accident. A supervisor could well believe that "sickness" was the correct category box, and that the box for "job-related injury" should not be checked. In addition, the forms signed by Murphy certified to the insurance company "that the information given by me in support of this claim is true and correct to the best of my knowledge." It was not a certification by her supervisor, who did not fill out the form for her and was not present each time she completed one. Murphy filled out six forms after she ceased working for Scapa.

Assuming Murphy's testimony on her supervisor's instructions is unimpeached, "[t]he testimony of an unimpeached witness must be considered and cannot be arbitrarily disregarded, but this does not mean that the triors of fact are obliged to believe testimony which in fact they discredit. [Cit.] Nor do they have to believe the party at interest, but they are the sole judges of credibility, particularly when there are facts and circumstances inconsistent with the party's testimony. [Cits.]" (Punctuation omitted.) *Brown Transp. Co. v. Parker*, 129 Ga. App. 737, 739-740 (2) (201 SE2d 17) (1973). The Board's finding was supported by evidence. The court erred in substituting itself as the factfinder.

The court also set aside the Board finding that some of the medical records indicated Murphy's difficulties may have resulted from other causes. The court explained that the "medical evidence does not support this finding." Murphy's repeated statements to her doctors (as reflected in the medical records) that her pain resulted from the car accident are alone sufficient to support this Board finding. But the Board in its award also thoroughly reviewed all the medical records and found that several causes were mentioned as possible sources of Murphy's difficulties, including diabetes, lupus, compression syndrome of the sciatic nerve, sacralization of L5, lumbosacral neuropathy, radiculopathy, disc herniation, and nerve root compression. The Board also noted the paucity of entries in the medical records mentioning her work activities. Ample evidence supported the Board's finding.

The third factual finding reversed was that no medical evidence reflected that Murphy's herniated disc was either caused by or aggravated by her work activities. The discussion above demonstrates that the Board had reason to make this finding. The few references to Murphy's work activities in the medical records generally do not attribute her ailments to those activities; they appear to indicate that her pain made working difficult at times. She points to a conclusory statement in an October 10, 1995 letter written by Dr. Lindley to her attorney that "if she did report the injury at work that she should be covered under workman's compensation." Dr. Lindley does not opine, however, that her work aggravated or caused her pain. And Dr. Lindley's statement is based on faulty information, for she had told him (1) no traumatic event had occurred which could be the cause of her pain, (2) she did a lot of heavy lifting at work, and (3) she had not experienced any problems with her back or legs prior to March 1995. Even if Dr. Lindley's opinion was construed as evidence her problem was work related, the Board had an evidentiary basis for disregarding it.

Since the Board's findings were supported by record evidence, the superior court erred in setting them aside, and its order is reversed.

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

DECIDED AUGUST 8, 1997.

*Barrow, Sims, Morrow, Lee & Gardner, Charles W. Barrow, Moore, Clarke, DuVall & Rodgers, Dennis L. Duncan*, for appellants. *Hackel & Hackel, Thomas M. Hackel*, for appellee.